1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY ORONA,                          1:12-CV-00581 LJO GSA HC

11                          Petitioner,      FINDINGS AND RECOMMENDATION
                                             REGARDING PETITION FOR WRIT OF
12         v.                                HABEAS CORPUS

13   HEDGEPETH, Warden,

14                          Respondent.
15   _____/

16

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

                                    **BACKGROUND**
19

20          Petitioner is currently in the custody of the California Department of Corrections and

21   Rehabilitation pursuant to a judgment of the Superior Court of California, County of Fresno,

22   following his conviction by jury trial on May 19, 2009, of first degree murder (Cal. Penal Code

23   § 187) and active participation in a criminal street gang (Cal. Penal Code § 186.22(a)).  (CT[1] 447,

24   449.)  The jury further found true the allegations that Petitioner had committed the murder in the

25   attempted commission of a carjacking (Cal. Penal Code § 190.2(a)(17)(L)), and that Petitioner

26   had committed the murder for the benefit of, or in association with, a criminal street gang (Cal.

27   Penal Code § 186.22(b)).  On June 17, 2009, Petitioner was sentenced to serve an indeterminate

28
     _____
            [1]"CT" refers to the Clerk's Transcript on Appeal.

                                            1

1  term of life without the possibility of parole, plus a consecutive term of ten years, in state prison.

2  (CT 447, 449.)

3      Petitioner timely filed a notice of appeal.  On January 12, 2011, the California Court of

4  Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned

5  decision.  (See Lodged Doc. No. 1.)  Petitioner then filed a petition for review in the California

6  Supreme Court.  On April 13, 2011, the petition was summarily denied.  (See Lodged Doc. No.

7  2.)

8      On April 4, 2012, Petitioner filed the instant federal habeas petition in this Court.  The

9  petition presents the following grounds for relief: 1) The accomplice instructions violated

10 Petitioner's constitutional rights by lowering the burden of proof; 2) CALCRIM Nos. 334 and

11 335 failed to adequately instruct the jury on corroboration; 3) The trial court erred by failing to

12 instruct on accomplice corroboration as to witness Alex Huerta; 4) CALCRIM No. 334 does not

13 adequately set forth the defendant's burden in proving a witness was an accomplice; 5) The trial

14 court erred in failing to sever the criminal street gang count and in failing to bifurcate the

15 criminal street gang enhancement; 6) The trial court denied Petitioner's right to an impartial jury

16 by failing to dismiss the entire jury venire; 7) The evidence was insufficient to support the

17 criminal street gang enhancement; 8) The trial court erred by failing to instruct the jury that

18 CALCRIM No. 370 did not apply to the gang enhancement; and 9) CALCRIM No. 226

19 impermissibly lightened the prosecution's burden of proof.  On June 29, 2012, Respondent filed

20 an answer to the petition.  Petitioner did not file a traverse.

21                              **STATEMENT OF FACTS**[2]

22      Holding a shotgun in his hand, Anthony Orona told Candice Clark that he and
   Oscar Ballesteros wanted her boyfriend Carlos Gonzalez's truck. He threatened to kill her
23 and her friend Elizabeth Hendricks if she did not tell Gonzalez to pick her up in his truck,
   but he promised not to hurt anyone if she cooperated. Clark called Gonzalez and asked
24 him to pick her up in the alley down by the tracks, where Orona and Ballesteros went
   after putting on gloves and bandannas. As Gonzalez drove up in his truck, Clark waved
25 him away, Orona and Ballesteros ran toward him, and he started to drive away. A shot
   was fired. He died of a gunshot wound to the head.

26

27      [2]The Fifth DCA's summary of the facts in its January 12, 2011, opinion is presumed correct. 28 U.S.C.
   §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court
28 adopts the factual recitations set forth by the Fifth DCA.

1    A jury found Orona guilty of first degree murder during the attempted commission
2    of a carjacking for the benefit of a criminal street gang (count 1; Pen.Code, §§ 186.22,
     subd. (b)(1), 187, subd. (a), 190.2, subd. (a)(17)(L)) and guilty of active participation in a
3    criminal street gang (count 2; § 186.22, subd. (a)). The court, inter alia, sentenced him to
     a term of life without the possibility of parole on the special circumstance murder and a
4    10-year term on the gang-benefit enhancement (count 1) and imposed and stayed a three-
     year term on the gang-participation charge (count 2). We reverse the judgment as to the
5    count 2 gang-participation charge for insufficiency of the evidence, strike the count 1
     gang-benefit enhancement from the judgment for lack of statutory authorization, modify
6    the judgment to correct sentencing errors involving a probation revocation fine and
     custody credits, and otherwise affirm the judgment.

7    (See Lodged Doc. No. 1.)

8                                    **DISCUSSION**

9    I.    Jurisdiction

10         Relief by way of a petition for writ of habeas corpus extends to a person in custody

11   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

12   or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

13   529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as

14   guaranteed by the U.S. Constitution. The challenged conviction arises out of Fresno County

15   Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28

16   U.S.C. § 2241(d).

17         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

18   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

19   enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

20   Cir. 1997), cert. denied, 522 U.S. 1008 (1997), quoting Drinkard v. Johnson, 97 F.3d 751, 769

21   (5th Cir.1996), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v.

22   Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's

23   enactment). The instant petition was filed after the enactment of the AEDPA and is therefore

24   governed by its provisions.

25   II.   Standard of Review

26         Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is

27   barred unless a petitioner can show that the state court's adjudication of his claim:

28         (1) resulted in a decision that was contrary to, or involved an unreasonable

                                            3

1    application of, clearly established Federal law, as determined by the Supreme
2    Court of the United States; or

3    (2) resulted in a decision that was based on an unreasonable determination of the
     facts in light of the evidence presented in the State court proceeding.

4    28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624

5    (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

6          As a threshold matter, this Court must "first decide what constitutes 'clearly established

7    Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

8    *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

9    Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

10   of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words,

11   'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

12   set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition,

13   the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

14   principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in

15   . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of

16   review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van

17   Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

18   Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an

19   end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S.

20   at 126; Moses, 555 F.3d at 760.

21         If the Court determines there is governing clearly established Federal law, the Court must

22   then consider whether the state court's decision was "contrary to, or involved an unreasonable

23   application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28

24   U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if

25   the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

26   question of law or if the state court decides a case differently than [the] Court has on a set of

27   materially indistinguishable facts."  Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at

28   72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in

1   character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, *quoting* Webster's Third

2   New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to

3   [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the

4   governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to"

5   clearly established Supreme Court precedent, the state decision is reviewed under the pre-

6   AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

7       "Under the 'reasonable application clause,' a federal habeas court may grant the writ if

8   the state court identifies the correct governing legal principle from [the] Court's decisions but

9   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

10   "[A] federal court may not issue the writ simply because the court concludes in its independent

11   judgment that the relevant state court decision applied clearly established federal law erroneously

12   or incorrectly.  Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,

13   538 U.S. at 75-76.  The writ may issue only "where there is no possibility fairminded jurists

14   could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."

15   Harrington, 131 S.Ct. at 784.  In other words, so long as fairminded jurists could disagree on the

16   correctness of the state courts decision, the decision cannot be considered unreasonable.  Id.  If

17   the Court determines that the state court decision is objectively unreasonable, and the error is not

18   structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious

19   effect on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

20       Petitioner has the burden of establishing that the decision of the state court is contrary to

21   or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

22   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

23   states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

24   state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th

25   Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

26       AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1)

27   is limited to the record that was before the state court that adjudicated the claim on the merits,"

28   and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v.

1   Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state

2   courts are presumed correct absent clear and convincing evidence to the contrary."  Miller-El v.

3   Cockrell, 537 U.S. 322, 340 (2003), citing 28 U.S.C. § 2254(e)(1).  However, a state court

4   factual finding is not entitled to deference if the relevant state court record is unavailable for the

5   federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v.

6   Tamayo-Reyes, 504 U.S. 1 (1992).

7   II.    Review of Claims

8          A.  CALCRIM No. 334 and 335 - Burden of Proof

9          In his first claim, Petitioner alleges the jury instructions contained in CALCRIM No. 334

10   and 335 impermissibly lowered the prosecution's standard of proof by allowing the jury to find

11   accomplice corroboration based on "slight" evidence. (See Petition at 6.)

12          This claim was first presented on direct appeal to the Fifth DCA.  The Fifth DCA denied

13   the claim in a reasoned decision. (See Lodged Doc. No. 1.)  Petitioner then raised the claim to the

14   California Supreme Court in a petition for review.  The California Supreme Court denied the

15   claim without comment or citation of authority.  (See Lodged Doc. No. 2.)  When the California

16   Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a

17   court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.

18   3 (1991).  In this case, the appellate court analyzed and rejected the claim as follows:

19          Orona argues that CALCRIM Nos. 334 and 335 prejudiced him by requiring him
20   to prove that a witness is an accomplice, by permitting the jury to use accomplice
     testimony against him if slight supporting evidence connects him to the crime, and by
21   failing to inform the jury that corroborating evidence must tend to connect him with the
     commission of the crime in a way that reasonably satisfies the jury the accomplice is
22   telling the truth. The Attorney General argues the contrary.

23          First, we address Orona's burden-of-proof and slight-supporting-evidence
     challenges. Solely with reference to Maritanya Cardiel, the focus of his disagreement with
24   CALCRIM No. 334 ("Accomplice Testimony Must Be Corroborated: Dispute Whether
     Witness Is Accomplice") is the sentence, "The burden is on [him] to prove that it is more
25   likely than not that Maritanya Cardiel was an accomplice." As to Cardiel, Clark, and
     Elizabeth, the focus of his disagreement with both CALCRIM No. 334 and CALCRIM
26   No. 335 ("Accomplice Testimony: No Dispute Whether Witness Is Accomplice") is the
     following: [FN11]

27          FN11. The quoted text is from the reporter's transcript of the court's instruction to
     the jury with CALCRIM No. 334, which is substantially the same as the reporter's
28   transcript of the court's instruction to the jury with CALCRIM No. 335 and as the

written versions of both instructions in the clerk's transcript.

"Supporting evidence, however, may be slight. It does not need to be enough by itself to prove that the defendants are guilty of the charged crime[ ] and it does not need to support every fact mentioned by the accomplice in the statement or about which the accomplice testified.

"On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. Supporting evidence must tend to connect the defendant to the commission of the crime. The evidence needed to support the statement or testimony of one accomplice cannot be provided by the statement or testimony of another accomplice."

The instructions Orona challenges correctly state the law. Section 1111 prohibits conviction on the testimony of an accomplice without corroboration by other evidence tending to connect the defendant with the commission of the crime.[FN12] (See *People v. Zapien* (1993) 4 Cal.4th 929, 982, 17 Cal.Rptr.2d 122, 846 P.2d 704.) "In enacting section 1111, the Legislature intended to eliminate the danger of a defendant being convicted solely upon the suspect, untrustworthy and unreliable evidence coming from an accomplice, who is likely to have self-serving motives that affect his credibility." (*People v. Belton* (1979) 23 Cal.3d 516, 526, 153 Cal.Rptr. 195, 591 P.2d 485.) Corroborating evidence that tends to implicate the defendant "'and thus relates to some act or fact that is an element of the crime'" is sufficient even if slight and entitled to little consideration when standing alone. (*People v. Richardson* (2008) 43 Cal.4th 959, 1024, 77 Cal.Rptr.3d 163, 183 P.3d 1146, quoting *People v. Avila* (2006) 38 Cal.4th 491, 563, 43 Cal.Rptr.3d 1, 133 P.3d 1076 (*Avila* ).)

FN12. In relevant part, the statute provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (§ 1111.)

The federal due process clause "'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" (*Martin v. Ohio* (1987) 480 U.S. 228, 231-232, 107 S.Ct. 1098, 94 L.Ed.2d 267, quoting *In re Winship* (1970) 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368.) The corroboration requirement "in section 1111 has no bearing on the prosecution's proof of any element of the charged crime," however, so "there is no constitutional impediment to placing on a defendant the burden of proving, by a preponderance of the evidence, a witness's status as an accomplice." (*People v. Frye* (1998) 18 Cal.4th 894, 968, 77 Cal.Rptr.2d 25, 959 P.2d 183 (*Frye*), overruled on another ground in People v. Doolin (2009) 45 Cal.4th 390, 420, 87 Cal.Rptr.3d 209, 198 P.3d 11 (*Doolin* ).)

On the premise that *Carmell v. Texas* (2000) 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (*Carmell* ) holds that a state corroboration requirement is part of the quantum of evidence necessary to convict, Orona argues that CALCRIM Nos. 334 and 335 lowered the prosecution's burden of proof in violation of due process by permitting the jury "to find corroboration based on slight evidence." Our reading of *Carmell* differs from his.

The issue before the United States Supreme Court in *Carmell* was whether a state statute that required both a rape victim's testimony *and* corroborating evidence to convict at the time of the rape at issue but that later required only a rape victim's testimony alone to convict could "be applied in a trial for offenses committed before the amendment's

effective date without violating the constitutional prohibition against state '*ex post facto*' laws." (*Carmell, supra,* 529 U.S. at p. 516, italics in original.) The opinion characterized the statute as a "'law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*'" (*Id.* at p. 522, quoting *Calder v. Bull* (1798) 3 Dallas 386, 390, italics in original.) Since the statute "changed the quantum of evidence necessary to sustain a conviction" so that "petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence," the high court held that the amendment violated the ex post facto clause. (*Carmell, supra,* at pp. 530, 552.) *Carmell* neither held nor intimated that a state corroboration requirement is part of the quantum of evidence necessary to convict.

Here, the court instructed the jury with CALCRIM No. 220 on the prosecution's burden of proof beyond a reasonable doubt. Absent evidence to the contrary, the jury is presumed to have followed the charge to the jury. (*Mendoza, supra,* 42 Cal.4th at p. 699, 68 Cal.Rptr.3d 274, 171 P.3d 2.) No evidence to the contrary is in the record. The court gave no instruction authorizing the jury to convict on the basis of "slight" supporting evidence connecting him to the crime.

(See Lodged Doc. No. 1.)

The Court notes that an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977), *quoting* Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); California v. Roy, 519 U.S. 2, 5 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) - whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

In this case, the state court determined the instruction was correct under state law. It further found the instruction did not lower the prosecution's burden of proof or violate Petitioner's federal due process rights in any way. As noted by Respondent, due process does not bar or limit the use of uncorroborated accomplice testimony. See United States v. Augenblick,

1   393 U.S. 348, 352 (1969) ("When we look at the requirements of procedural due process, the use

2   of accomplice testimony is not catalogued with constitutional restrictions"); United States v.

3   Castro, 476 F.2d 750, 753 (9th Cir.1973), *citing* Bible v. United States, 314 F.2d 106 (9th

4   Cir.1963), *cert. denied*, 375 U.S. 862 (1963) ("The testimony of an accomplice . . . is sufficient

5   to support a conviction"); Darden v. United States, 405 F.2d 1054, 1056 (9th Cir.1969) ("It is

6   well established that a conviction in federal court may be based on the uncorroborated testimony

7   of an accomplice"); Harrington v. Nix, 983 F.2d 872, 874 (8th Cir.1993) ("[S]tate laws requiring

8   corroboration do not implicate constitutional concerns that can be addressed on habeas review.").

9   Thus, if uncorroborated accomplice testimony is permissible under the Constitution, then

10  accomplice testimony corroborated by only "slight" evidence must also be permissible.

11  Accordingly, the claim fails.

12      Petitioner argues that the Supreme Court, in Carmell v. Texas, 529 U.S. 513, 533, fn. 22

13  (2000), held "that a state corroboration requirement is part of the 'quantum of evidence'

14  necessary to convict." (See Petition at 7.)  The Court does not agree with Petitioner's reading of

15  Carmell.  In Carmell, the Supreme Court determined an ex post facto violation had occurred

16  when the State retroactively applied an amended law that changed the quantum of evidence.  Id.

17  at 530.

18      Under the law in effect at the time the acts were committed, the prosecution's case was
    legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State
19  could produce both the victim's testimony *and* corroborative evidence. The amended law,
    however, changed the quantum of evidence necessary to sustain a conviction; under the
20  new law, petitioner could be (and was) convicted on the victim's testimony alone, without
    any corroborating evidence.

21

22  Id. In Petitioner's case, the law did not change to alter the quantum of evidence necessary to

23  sustain the conviction.  There is no ex post facto concern here.

24      Further, the state court reasonably concluded that there is no reasonable probability that

25  the jury misunderstood CALCRIM Nos. 334 and 335 to authorize a conviction based on "slight"

26  evidence.  As noted by Respondent and the appellate court, the jury was instructed on the

27  presumption of innocence and the prosecution's burden to prove Petitioner's guilt beyond a

28  reasonable doubt. (CT 295.)  The trial court further instructed the jury that they may convict

based on accomplice testimony, but only if that testimony was corroborated by at least slight

evidence.  Jurors are presumed to follow their instructions.  Penry v. Johnson, 532 U.S. 782, 799

(2001).  There is nothing in the record to suggest the jurors did not follow their instructions or

that they were confused with regard to the instructions on accomplice testimony.

Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved

an unreasonable application of, clearly established Federal law," or an "unreasonable

determination of the facts in light of the evidence."  The claim must be rejected. 28 U.S.C.

§ 2254(d).

### B.  CALCRIM No. 334 and 335 - Inadequate

In a related claim, Petitioner argues that the instructions on accomplice testimony were

inadequate.  He states the jury was instructed that "supporting evidence must tend to connect the

defendant to the commission of the crime." (See Petition at 15.)  He argues the jury should

instead have been instructed that "the evidence must connect the defendant with the commission

of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the

truth." (See Petition at 15.)

This claim was also raised on direct appeal to the Fifth DCA where it was denied in a

reasoned decision. (See Lodged Doc. No. 1.)  Petitioner then raised the claim to the California

Supreme Court, where it was summarily denied.  (See Lodged Doc. No. 2.)  Accordingly, the

Court must "look through" to the decision of the appellate court.  Ylst, 501 U.S. at 804-05 & n.

3.  In denying the claim, the Fifth DCA stated:

> Second, we address Orona's corroborating-evidence challenge. He is correct that
> corroborating evidence must "'connect the defendant with the crime in such a way as to
> satisfy the jury that the accomplice is telling the truth'" (People v. Lewis (2001) 26
> Cal.4th 334, 370, 110 Cal.Rptr.2d 272, 28 P.3d 34 (Lewis), quoting People v. Fauber
> (1992) 2 Cal.4th 792, 834, 9 Cal.Rptr.2d 24, 831 P.2d 249), but he is mistaken in his
> belief that section 1111 requires the court to instruct that corroborating evidence must
> connect the defendant with the commission of the crime and satisfy the jury that the
> accomplice is telling the truth. The statute requires nothing more than that accomplice
> testimony "be corroborated by such other evidence as shall tend to connect the defendant
> with the commission of the offense." (§ 1111.) Since other evidence tending to connect
> the defendant with the crime also corroborates the accomplice's testimony, the jury needs
> no additional instruction to infer that the accomplice is telling the truth.

(See Lodged Doc. No. 1.)

This claim is not cognizable on federal habeas review. <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982) (federal courts "may intervene only to correct wrongs of constitutional dimension"); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir.1991); <u>Tinsley v. Borg</u>, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief).   Federal courts are bound by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

As previously discussed, federal due process concerns are not implicated with respect to a state requirement that accomplice testimony be corroborated.  <u>Augenblick</u>, 393 U.S. at 352. The claim is premised on the interpretation of state law.  It is therefore not cognizable and must be denied.  <u>Estelle</u>, 502 U.S. at 67.

### C.  Accomplice Instruction as to Specific Witness

Petitioner next argues that the trial court erred in failing to sua sponte instruct the jury that witness Alex Huerta was an accomplice.

This claim was raised before the Fifth DCA on direct appeal, and it was denied in a reasoned decision. (<u>See</u> Lodged Doc. No. 1.)  It was then raised by petition for review to the California Supreme Court and subsequently denied without comment. (<u>See</u> Lodged Doc. No. 2.) The Court must review the appellate court decision, since that is the last reasoned state court decision.  <u>Ylst</u>, 501 U.S. at 804-05 & n. 3.  The Fifth DCA rejected the claim as follows:

> Huerta testified that, shortly before the shooting, Orona said he wanted to rob somebody; Elizabeth asked Clark if she knew anybody; Clark replied, "Some guy in a truck"; Clark said she wanted to use his cell phone to call her boyfriend; Elizabeth asked to use his cell phone; and he let her. Gonzalez's home phone showed a 5:00 a.m. call from Huerta's cell phone. At 5:12 a.m., patrol officers received a call about the shooting.

> On that record, Orona argues that substantial evidence showed Huerta was "an accomplice to robbery/carjacking as a matter of law" or "at least an accomplice as a matter of fact." With commendable candor, the Attorney General characterizes the issue

as "a close question" and acknowledges that Huerta "assisted" by letting Elizabeth use his cell phone "before or at the time" he "knew of the intention/plan to carjack someone" but argues that no accomplice instruction was necessary.

The law is straightforward. An accomplice's liability "depends on whether he [or she] promotes, encourages, or assists the perpetrator and *shares* the perpetrator's criminal purpose." (*People v. Sully* (1991) 53 Cal.3d 1195, 1227, 283 Cal.Rptr. 144, 812 P.2d 163 (*Sully*), italics in original.) A person who "merely gives assistance with knowledge of the perpetrator's criminal purpose" is not an accomplice. (*Ibid.*) "Whether a person is an accomplice within the meaning of section 1111 presents a factual question for the jury 'unless the evidence permits only a single inference.'" (*People v. Williams* (1997) 16 Cal.4th 635, 679, 66 Cal.Rptr.2d 573, 941 P.2d 752 (*Williams*), quoting *Sully, supra,* 53 Cal.3d at p. 1227, 283 Cal.Rptr. 144, 812 P.2d 163.) "Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only when the facts regarding the witness's criminal culpability are 'clear and undisputed.'" (*Williams, supra,* at p. 679, quoting *People v. Rodriguez* (1986) 42 Cal.3d 730, 759, 230 Cal.Rptr. 667, 726 P.2d 113.) "When there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices." (*Frye, supra,* 18 Cal.4th at pp. 965-966, 77 Cal.Rptr.2d 25, 959 P.2d 183, disapproved on another ground by *Doolin, supra,* 45 Cal.4th at p. 421, fn. 12, 87 Cal.Rptr.3d 209, 198 P.3d 11.)

On the law and the record, we agree with the Attorney General that the issue is "a close question" and agree with Orona that the court breached a duty to instruct sua sponte on Huerta as an accomplice. The only remaining question, then, is whether the omission was prejudicial. A "failure to instruct on accomplice liability under section 1111 is harmless if there is 'sufficient corroborating evidence in the record.'" (*Avila, supra,* 38 Cal.4th at p. 562, 43 Cal.Rptr.3d 1, 133 P.3d 1076, quoting *Lewis, supra,* 26 Cal.4th at p. 370, 110 Cal.Rptr.2d 272, 28 P.3d 34.) The testimony of both a detective and Gonzalez's mother corroborated Huerta's testimony that Clark used his cell phone to call Gonzalez. Corroborating evidence is sufficient even if slight and entitled to little consideration standing alone. (*Sanders, supra,* 11 Cal.4th at p. 535, 46 Cal.Rptr.2d 751, 905 P.2d 420.) All that the law requires is that the evidence tend to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury the accomplice is telling the truth. (*Ibid.*) That is the state of the record here. Sufficient corroboration of Huerta's testimony is in the record. The omission of the accomplice instruction was harmless.

(See Lodged Doc. No. 1.)

As a preliminary matter, the Court notes that any error in the state court's determination of whether state law allowed for an instruction in this case cannot form the basis for federal habeas relief. Estelle, 502 U.S. at 67-68. "'Failure to give [a jury] instruction which might be proper as a matter of state law,' by itself, does not merit federal habeas relief." Menendez v. Terhune, 422 F.3d 1012, 1029, *quoting* Miller v. Stagner, 757 F.2d 988, 993 (9th Cir.1985). The Supreme Court has stated instead that a claim that a court violated a petitioner's due process rights by omitting an instruction requires a showing that the error "so infected the entire trial that the resulting conviction violate[d] due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) ,

1  *quoting* <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973).

2      Respondent concedes a federal claim may be made based on a violation of Cal. Penal

3  Code § 1111, which disallows convictions based solely on uncorroborated accomplice testimony.

4  A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily

5  deprives the defendant of a state law entitlement. <u>See</u> <u>Hicks v. Oklahoma</u>, 447 U.S. 343, 346

6  (1980).  In <u>Laboa v. Calderon</u>, 224 F.3d 972, 979 (9th Cir.2000), the Ninth Circuit held that Cal.

7  Penal Code § 1111 does create such a state law entitlement and is thus entitled to due process

8  protections.

9      In this case, the state court reasonably determined that Petitioner was not deprived of due

10  process, since the basis of Petitioner's convictions was not uncorroborated accomplice testimony.

11  Rather, the state court determined that there was substantial corroborating evidence in the record

12  corroborating witness Huerta's testimony.  <u>See</u> <u>People v. Avila</u>, 38 Cal.4th 491, 562 (2006) ("A

13  trial court's failure to instruct on accomplice liability under section 1111 is harmless if there is

14  'sufficient corroborating evidence in the record.'").  The state court noted that "[t]he testimony of

15  both [detective Byrd] and Gonzalez's mother corroborated Huerta's testimony that Clark used

16  [Huerta's] cell phone to call Gonzalez." (<u>See</u> Lodged Doc. No. 1.)  In light of the corroborating

17  evidence, the state court reasonably determined that Petitioner's conviction did not run afoul of

18  § 1111.  The trial court therefore did not arbitrarily deny Petitioner a state-created entitlement,

19  and he is not entitled to habeas relief on that basis.  Assuming that the trial court erred in failing

20  to give the instruction, the error did not have a substantial and injurious effect on the jury's

21  verdict. The alleged error was therefore harmless. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638

22  (1993); <u>Bains v. Cambra</u>, 204 F.3d 964, 977 (9th Cir.2000).

23      D.  CALCRIM No. 334 - Incorrect Standard

24      In his next claim for relief, Petitioner challenges jury instruction CALCRIM No. 334 for

25  requiring a defendant to prove a witness was an accomplice "by a preponderance of evidence."

26  (<u>See</u> Petition at 21.)  Instead, Petitioner claims, the jury instruction should require that a

27  "defendant need only show probable cause to believe that the witness was guilty of the offense."

28  (<u>See</u> Petition at 21.)

Like the previous claims, the claim was presented and rejected by the Fifth DCA on direct appeal.  It was also rejected thereafter by the California Supreme Court.  The Court reviews the last reasoned state decision, which in this case was the appellate opinion.  In rejecting the claim, the court stated:

> The corroboration requirement "in section 1111 has no bearing on the prosecution's proof of any element of the charged crime," however, so "there is no constitutional impediment to placing on a defendant the burden of proving, by a preponderance of the evidence, a witness's status as an accomplice." (*People v. Frye* (1998) 18 Cal.4th 894, 968, 77 Cal.Rptr.2d 25, 959 P.2d 183 (*Frye*), overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 420, 87 Cal.Rptr.3d 209, 198 P.3d 11 (*Doolin*).)

(See Lodged Doc. No. 1.)

This claim is not cognizable on federal habeas review.  As previously stated, an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief.  Estelle, 502 U.S. at 67 (1991).  Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether  'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977), *quoting* Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  In this case, there are no due process concerns with respect to the amount of corroboration necessary to support accomplice testimony.  Augenblick, 393 U.S. at 352 ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions"); Harrington, 983 F.2d at 874 ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review.").  Since Petitioner's challenge is entirely a question of state law, habeas relief is foreclosed and the claim must be denied. 28 U.S.C. § 2254(a).

E.  Motions to Sever and to Bifurcate

Petitioner claims the trial court abused it discretion and denied Petitioner his due process rights by denying Petitioner's motion to bifurcate the criminal street gang enhancement and by denying his motion to sever the criminal street gang count. (See Petition at 24.)

This claim was also first presented on direct appeal to the Fifth DCA where it was rejected in a reasoned decision.  It was then presented to the California Supreme Court in a

14

petition for review.  The petition was summarily denied.  Accordingly, the Court reviews the last reasoned decision, in this case the appellate court opinion:

Orona argues that the denial of his motion to sever the gang-participation charge and bifurcate the special-circumstance gang allegation and the gang-benefit allegation prejudiced him.[FN7] The Attorney General argues the contrary.

FN7. Orona uses "bifurcate" to refer to the special-circumstance gang allegation, the gang-benefit allegation, and the gang-participation charge alike, but "bifurcate" refers to allegations and "sever" refers to substantive charges. (See *People v. Burnell* (2005) 132 Cal.App.4th 938, 946, fn. 5, 34 Cal.Rptr.3d 40.)

On April 15, 2009, the parties filed documents addressing the gang evidence issue. The prosecutor's trial brief announced his intent to call a police gang expert to testify about the Lewis Street Bulldog gang, Orona's and Ballesteros's membership in the gang, documented ties of others to the gang, and conduct showing the involvement of Orona, Ballesteros, and others in the gang. "Gang evidence will be central in this case" to prove the criminal street gang charge, the criminal street gang special circumstance allegation, and the gang-benefit allegation, he argued, and "will play a prominent role in establishing a motive for the carjacking that led to the homicide" on the theory that Orona and Ballesteros targeted Gonzalez after Clark disrespected them "in the heart of Lewis Street Bulldog turf." A defense motion in limine, which sought to sever the gang-participation charge, the special-circumstance gang allegation, and the gang-benefit allegation, argued that the gang evidence was "so minimally probative" but "so inflammatory" as to threaten "to sway the jury to convict regardless of [his] actual guilt."[FN8]

FN8. Orona requests that we take judicial notice of the defense motion in limine, which Ballesteros filed, in which Orona joined, and which is in the record on appeal in *People v. Ballesteros* (F057932). We grant his request. (Evid.Code, § 452, subd. (d).)

On April 16, 2009, the court held a hearing on the gang evidence issue. The prosecutor argued that the evidence was essential to the jury's understanding of why Orona and Ballesteros felt disrespected when Clark, a 15-year-old group home runaway, showed "attitude" when she asked why Orona wanted to know where Elizabeth was.[FN9] "Nigger, I'm an east side Bulldog. You'd better not scrape me off," he replied. The prosecutor argued that not allowing "some 15-year-old girl to mouth off to them" was "really what prompts what happened" and that "people who are not gang members" would have "simply brushed off" a similar exchange. Orona and Ballesteros were "teaching her a lesson," the prosecutor emphasized, not only by "going after her boyfriend" but also by "drawing her into it." In reply to the court's questions, the prosecutor stated that neither Ballesteros nor Orona knew Gonzalez and that both Clark and Elizabeth "entered pleas to carjacking, stipulated nine-year terms."

FN9. For brevity, not from disrespect, references to the two witnesses with the same last name-Elizabeth Hendricks and her former husband Matthew Hendricks-are solely by first name after initial references by both names.

The defense argued a different interpretation of the facts-that three times before the shooting Clark went to Elizabeth's house (where she did drugs and was "totally in the conversation about what's going to happen"), "voluntarily" called Gonzalez to tell him where to meet her, and showed that "people who are very young can be very wicked" (contrary to the prosecutor's portrayal of her as a "little girl who did not know what was

going on and who was being made to do things by the gang"). After Orona asked Clark where Elizabeth was, she told him, "You just better leave me the fuck alone," and he replied, "All right. You've got balls." The defense argued that a detective's notes "reflect that in fact little Miss [ ] Clark was the one who instigated any talk of carjacking her boyfriend."

In a series of rulings, the court denied the defense motion, acknowledged a standing objection to the gang expert's testimony on statutory and constitutional grounds alike, accepted the stipulation that the Lewis Street Bulldogs were a criminal street gang of which Orona and Ballesteros were members, and denied later motions to reconsider. Denying one motion to reconsider, the court noted, "The ruling originally was predicated on, among other things, the cross admissibility of evidence on the issue pertaining to gang activity and the events relating directly to the homicide." Denying a later motion to reconsider, the court observed that "case law is on the side of not bifurcating." We agree.

In cases *not* involving the gang enhancement," our Supreme Court held, "evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049, 16 Cal.Rptr.3d 880, 94 P.3d 1080 (*Hernandez*), italics in original.) On the other hand, since "evidence of gang membership is often relevant to, and admissible regarding, the charged offense," evidence such as "the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries ... can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime," the court noted. (*Ibid.*) Insofar as "the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*Id.* at pp. 1049-1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080.)

The scope of the court's discretion in ruling on a motion to sever a substantive count and in ruling on a motion to bifurcate a special allegation is broad. "Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime," our Supreme Court observed, "a court may still deny bifurcation." (*Hernandez, supra,* 33 Cal.4th at p. 1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080.) "In the context of severing charged offenses," the court elaborated, "'additional factors favor joinder. Trial of the counts together ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials,'" the court added. (*Ibid.,* quoting *Frank v. Superior Court* (1989) 48 Cal.3d 632, 639, 257 Cal.Rptr. 550, 770 P.2d 1119 (*Frank*).) So "when the evidence sought to be severed relates to a charged offense, the 'burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.'" (*Hernandez, supra,* at 0p. 1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080, quoting *Frank, supra,* at p. 938.) Our review of the court's rulings persuades us Orona fails to satisfy his burden.

"Even if a trial court's severance or joinder ruling is correct at the time it was made," however, "a reviewing court must reverse the judgment if the 'defendant shows that joinder actually resulted in "gross unfairness" amounting to a denial of due process.'" (*People v. Mendoza* (2000) 24 Cal.4th 130, 162, 99 Cal.Rptr.2d 485, 6 P.3d 150, quoting *People v. Arias* (1996) 13 Cal.4th 92, 127, 51 Cal.Rptr.2d 770, 913 P.2d 980.) That is not the state of the record here. The gang expert testified about the importance to the gang of establishing territorial dominance over an area, instilling fear by acts of violence, and retaliating against anyone who cooperates with law enforcement and against anyone outside the gang who disrespects anyone inside the gang. He opined that the attempt to carjack Gonzalez benefitted the gang's members by showing their willingness to commit serious crimes for each other and could benefit the Lewis Street Bulldogs, too, by creating

fear of the gang in the community.

The evidence that the court's rulings denying severance and bifurcation brought into Orona's trial was not markedly inflammatory. Conspicuously absent was any evidence that he or Ballesteros committed any violent crime other than the charged offenses. "Of course, because the culture and habits of gangs are matters which are 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact' (Evid.Code, § 801, subd. (a)), opinion testimony from a gang expert, subject to the limitations applicable to expert testimony generally, is proper." (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1223, fn. 9, 19 Cal.Rptr.3d 402, citing *People v. Gardeley* (1996) 14 Cal.4th 605, 617, 59 Cal.Rptr.2d 356, 927 P.2d 713.) The gang expert's testimony was admissible on the issue of motive.

Even so, Orona focuses on the court's comment about the "unusual number of for-cause excuses," "anecdotal statements about knowledge of certain types of gang-related crimes," and "anecdotal experiences involving murder," on the basis of which he argues that "the jury selection process demonstrated a high degree of anti-gang prejudice in the local community." Yet he cites no authority for the premises implicit in his argument that seating a fair jury is impossible in a gang case and that the rules of law governing severance and bifurcation are inapplicable to gang cases. To the contrary, as the court thoughtfully added, a ruling in his favor on his motion ultimately could not "accomplish anything" since "the jury is going to have to deal with ... gang activity being factually at issue."

Relying on *People v. Albarran* (2007) 149 Cal.App.4th 214, 57 Cal.Rptr.3d 92, a case in which "the gang evidence was not sufficient to prove the gang allegations" (*id.* at p. 226, 57 Cal.Rptr.3d 92), Orona quotes the opinion to argue that the "paramount function" of the gang evidence "was to show [his] criminal disposition" (*id.* mount function of the gang evidence here was not to show his criminal disposition but to prove the gang-participation charge, the special-circumstance gang allegation, and the gang-benefit allegation. Though not sufficient to prove the gang-participation charge or the special-circumstance gang allegation, that evidence was sufficient to prove the gang-benefit allegation. (*Ante,* part 1.) *Albarran* is inapposite.

"The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*People v. Falsetta* (1999) 21 Cal.4th 903, 913, 89 Cal.Rptr.2d 847, 986 P.2d 182, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 70, 112 S.Ct. 475, 116 L.Ed.2d 385.) The court's rulings denying severance of the gang-participation charge and bifurcation of the special-circumstance gang allegation and the gang-benefit allegation did not render the trial fundamentally unfair.

(See Lodged Doc. No. 1.)

As correctly argued by Respondent, there is no clearly established Federal law which holds that joinder or consolidation of charges may violate the Constitution.  In United States v. Lane, 474 U.S. 438, 446 n.8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  However, in Young v. Pliler, the Ninth Circuit noted:

*Lane* considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. *See Lane*, 474 U.S. 438, 446 & n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, *Lane's* broad statement-found in a footnote without citation to any legal authority-that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

273 Fed.Appx. 670, n.1, 2008 WL 1757564 (9th Cir.2008) (unpublished); <u>see also</u> <u>Collins v. Runnels</u>, 603 F.3d 1127, 1132-33 (9th Cir.2010).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>. Given that there is no clearly established Federal law in this instance, the Court cannot grant relief.

Even if the Supreme Court's footnote is considered clearly established Federal law, no constitutional violation occurred in this case. As thoroughly discussed by the appellate court, the gang evidence was relevant to the charged offense. Petitioner fails to demonstrate that the prejudicial effect of the evidence outweighed the probative value such that Petitioner was denied his Fifth Amendment right to a fair trial.

The state court adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). The claim should be rejected.

F.   Dismissal of Venire

In his next claim, Petitioner alleges the trial court should have dismissed the entire jury venire when the venire was exposed to various statements by potential jurors concerning their experiences with, and opinions of, gangs. He claims the impartiality of the jury venire was compromised such that he was denied a fair trial.

Like his previous claims, this claim was raised on direct appeal. This Court must "look

18

through" to the opinion of the Fifth DCA, which was the last reasoned decision. <u>Ylst</u>, 501 U.S. at 804-05 & n. 3. The Fifth DCA analyzed the claim as follows:

> Orona argues that the denial of his motion to dismiss the entire venire on the basis of comments by prospective jurors during voir dire prejudiced him. The Attorney General argues the contrary.

> The foundation of Orona's argument is that during voir dire "several [prospective] jurors spoke about their feelings about gangs," "a newspaper article was published about an incident in which a Bulldog gang member held down his seven-year-old son while another gang member tattooed the child with a gang tattoo," a prospective juror who knew the gang expert said he "would tend to believe him," and a prospective juror who was a retired police officer said he "would be biased toward both defendants." By the time two-and-one-half days of voir dire had elapsed, he argues, "over 50% of the people on the jury panel referred to gangs and stated that they couldn't be fair."

> Thumbnail sketches of colloquies between counsel and four prospective jurors on voir dire illuminate Orona's argument. Defense counsel asked one, "Are you telling me that just the status of my client being a Bulldog gang member is all you need to hear to convict him without hearing any evidence from the district attorney?" The prospective juror replied, "No, but it does weigh, you know, heavily in some of my views, personal views." His attorney asked, "How heavily?," to which the prospective juror replied, "Very." His attorney asked, "That you can't put it aside and give my client a fair trial?," to which the prospective juror replied, "Possibly, yes."

> Defense counsel asked whether another prospective juror was going to hold against her client "that some supposed Bulldog member made his seven-year-old son get a tattoo," to which the prospective juror, acknowledging the news had nothing to do with her client, nonetheless commented about how "you hear it so much that, you know, have this concept of they're all like that. Why are they in the first place in gangs, you know." Yet another prospective juror disclosed that he was the gang expert's coach in college during the "'93 and '94 seasons at Fresno State" and stated the belief he could fairly and impartially assess his testimony but candidly replied, "Yes," to the question whether he "would tend to believe him." A different prospective juror disclosed that he was a retired police officer whose motorcycle officer neighbor almost lost his life in a shooting, who himself suffered bruised ribs and a lacerated liver in an assault by a gang member, who was "not very fond of gang members," and who "would probably be definitely biased" against both defendants.

> The court excused all four of those prospective jurors, along with eight others, for cause. Orona and Ballesteros moved to discharge the entire venire. The court rhetorically inquired of counsel, "How do you propose selecting a jury in an absolute factual vacuum where the issues of gangs are not brought up?" The court declined counsel's invitation to revisit the issue of severance and bifurcation and denied the motion to discharge the entire venue.

> The standard of review of the court's ruling is abuse of discretion. (*People v. Medina* (1990) 51 Cal.3d 870, 889, 274 Cal.Rptr. 849, 799 P.2d 1282.) Our Supreme Court emphasizes that a court has "broad discretion to determine whether or not possible bias or prejudice against the defendant has contaminated the entire venire to such an extreme that its discharge is required" and that "discharging the entire venire is a remedy that should be reserved for the most serious occasions of demonstrated bias or prejudice, where interrogation and removal of the offending venirepersons would be insufficient protection for the defendant." ( *Ibid.*) Orona argues that, on the record here, discharge of

1    the entire venue was imperative. We disagree.

2            The broad swath of destruction that criminal street gangs wreak on everyday life is
     indisputable. The Legislature has found "that the State of California is in a state of crisis
3    which has been caused by violent street gangs whose members threaten, terrorize, and
     commit a multitude of crimes against the peaceful citizens of their neighborhoods" and
4    whose "activities, both individually and collectively, present a clear and present danger to
     public order and safety and are not constitutionally protected." (§ 186.21.) So the notion
5    that voir dire in a gang case might present challenges absent from a non-gang case should
     be no surprise. "Just as a finder of fact is in a better position than the reviewing court to
6    judge the credibility of a witness, the trial judge is in a better position to gauge the level
     of bias and prejudice created by juror comments." (*People v. Martinez* (1991) 228
7    Cal.App.3d 1456, 1466, 279 Cal.Rptr. 858.) Our review of the record satisfies us that the
     court did not commit an abuse of discretion in denying Orona's motion to dismiss the
8    entire venire. Since we reject the statutory premise of his constitutional argument, his due
     process claim likewise fails. (*People v. Sanders* (1995) 11 Cal.4th 475, 510, 46
9    Cal.Rptr.2d 751, 905 P.2d 420, fn. 3 (*Sanders*).)

10   (See Lodged Doc. No. 1.)

11        "In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . .

12   trial  . . . by an impartial jury," U.S. Const. amends. VI and XIV; see Duncan v. Louisiana, 391

13   U.S. 145 (1968).  The right to a trial by an impartial jury lies at the very heart of due process.

14   Irvin v. Dowd, 366 U.S. 717, 721-722 (1961).  The Court recognizes the "wide discretion owed

15   to trial courts when it comes to jury-related issues." Mu'Min v. Virginia, 500 U.S. 415, 427-428

16   (1991).

17        In Lucero v. Kerby, the Tenth Circuit set forth the following two-part test to determine

18   whether due process required a trial court to dismiss a venire panel:

19           [T]o establish a constitutional violation based on the trial court's refusal to allow
             individual, sequestered voir dire or to dismiss the venire panel, petitioner "must
20           demonstrate either that the trial resulted in actual prejudice or that it gave rise to a
             presumption of prejudice because it involved 'such a probability that prejudice will result
21           that it is deemed inherently lacking in due process.'"

22   Lucero v. Kerby, 133 F.3d 1299, 1308 (10th Cir.1998), *citing* Brecheen v. Reynolds, 41 F.3d

23   1343, 1350 (10th Cir.1994), *quoting* Estes v. Texas, 381 U.S. 532, 542–43 (1965).  The Supreme

24   Court applied this two-part test in Skilling v. United States, __ U.S. __, 130 S.Ct 2896 (2010).

25   In Skilling, the Supreme Court determined that the petitioner failed to demonstrate that a

26   presumption of prejudice arose or that actual bias infected the jury that tried him due to negative

27   pretrial publicity. Id.

28        In this case, Petitioner fails to establish any actual prejudice on the part of the empaneled

                                                20

1    jurors.  As to a presumption of prejudice, the state court reasonably determined that no such

2    presumption arose.  As noted by the appellate court, negative experiences with gangs have

3    become commonplace, as the destruction wrought by gangs is all too prevalent in California.  It

4    would be difficult if not impossible to find a panel of potential jurors having no experience or

5    negative opinions of gangs, and in any case, that is not the goal of voir dire.  "Jurors . . . need not

6    enter the box with empty heads in order to determine the facts impartially."  Id. at 2925; see also

7    Irvin, 366 U.S. at 722 (Jurors are not required to be "totally ignorant of the facts and issues

8    involved"; "scarcely any of those best qualified to serve as jurors will not have formed some

9    impression or opinion as to the merits of the case.").  "It is sufficient if the juror[s] can lay aside

10   [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court."

11   Irvin, 366 U.S. at 723.  Here, the experiences and opinions shared by the potential jurors on voir

12   dire were nothing out of the ordinary, and certainly not sufficient to give rise to a presumption of

13   prejudice.  The state court adjudication of the claim did not result in a decision that was contrary

14   to, or involved an unreasonable application of, clearly established Federal law, or result in a

15   decision that was based on an unreasonable determination of the facts in light of the evidence. 28

16   U.S.C. § 2254(d). The claim should be rejected.

17        G.   Insufficient Evidence of Gang Enhancement

18        Petitioner next argues the evidence was insufficient to support the criminal street gang

19   enhancement under Cal. Penal Code § 186.22(b).  The claim is based on the Ninth Circuit's

20   opinions in Garcia v. Carey, 395 F.3d 1099 (9th Cir.2005), and Briceno v. Scribner, 555 F.3d

21   1069 (9th Cir.2009), "which held that the gang enhancement required a specific intent to facilitate

22   other criminal activities by gang members." (See Petition at 26.)

23        This claim was raised on direct appeal to the Fifth DCA and rejected in a reasoned

24   decision.  It was then raised to the California Supreme Court where it was summarily denied.

25   The Court must review the last reasoned state decision, which in this case was the opinion of the

26   Fifth DCA.  In rejecting this claim, the Fifth DCA stated:

27            With commendable candor, Orona acknowledges the sufficiency of the evidence
             that the crimes were "done in association with the gang" but argues that the crimes "were
28            not done to facilitate other gang activity." (Italics in original.) The core of his argument is

21

a Ninth Circuit case, *Garcia v. Carey* (9th Cir.2005) 395 F.3d 1099 (*Garcia*), which a later Ninth Circuit case characterized as concluding "that the specific intent required under § 186.22(b) must be to facilitate *other* criminal activities by gang members." (*Briceno v. Scribner* (9th Cir.2009) 555 F.3d 1069, 1079, fn. 3 (*Briceno*), citing *Garcia, supra,* at pp. 1103-1104, italics in original.)

Several Court of Appeal opinions have repudiated the Ninth Circuit's reasoning in *Briceno* and *Garcia.* (See *People v. Romero* (2006) 140 Cal.App.4th 15, 19, 43 Cal.Rptr.3d 862 (disagreeing with and declining to follow "*Garcia's* interpretation of the California statute"); *People v. Hill* (2006) 142 Cal.App.4th 770, 774, 47 Cal.Rptr.3d 875 (observing that *Garcia* "misinterprets California law"); *People v. Vazquez* (2009) 178 Cal.App.4th 347, 354, 100 Cal.Rptr.3d 351 (rejecting "the Ninth Circuit's attempt to write additional requirements into the statute"). After briefing by the parties here was complete, our Supreme Court, expressly agreeing with *Romero, Hill,* and *Vazquez,* held "that the scienter requirement in section 186.22(b)(1)-i.e., 'the specific intent to promote, further, or assist in any criminal conduct by gang members'-is unambiguous and applies to *any* criminal conduct." (*People v. Albillar* (2010) 51 Cal.4th 47, ---- [2010 Cal. LEXIS 13054, 39-40], 2010 WL 5140768 italics in original.) Orona's argument is meritless.

(See Lodged Doc. No. 1.)

As Respondent correctly notes, the Ninth Circuit has recognized that the California Supreme Court's opinion on this issue in People v. Albillar, 51 Cal.4th 47 (2010), is authoritative. Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir.2011). The federal court is bound by the state court ruling on the question of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). This claim should be rejected. Estelle, 502 U.S. at 67.

H.   CALCRIM No. 370

Petitioner next claims the trial court failed to instruct the jury that the instruction on motive contained in CALCRIM No. 370 did not apply to the gang enhancement alleged in count one. He argues that the trial court's omission confused the jury and allowed it to find the gang enhancement without also finding the required element of intent.

This claim was also presented on direct appeal to the Fifth DCA and rejected in a reasoned decision. It was also presented in a petition for review to the California Supreme Court where it was summarily denied. The Court reviews the opinion of the Fifth DCA. In denying the claim, the appellate court stated:

Orona argues that CALCRIM No. 370 prejudiced him due to the absence of an admonition to the jury not to apply the instruction to the gang-benefit allegation. The Attorney General argues the contrary.

The court instructed the jury with CALCRIM No. 370 on motive and the charged *crimes* as follows:

> "The People are not required to prove the defendant had a motive to commit *any of the crimes charged.* In reaching your verdict you may, however, consider whether the defendant had a motive. Having a motive may be a factor tending to show the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty." (Italics added.)

The court instructed the jury with CALCRIM No. 736 on the *special-circumstance gang allegation* in relevant part as follows:

> "The defendants are charged with the *special circumstance* of committing murder while an active participant in a criminal street gang. [¶] To prove that this special circumstance is true, the People must prove that: [¶] One, the defendant intentionally killed Carlos Gonzalez. [¶] Two, at the time of the killing the defendant was an active participant in a criminal street gang. Three, the defendant knew that members of the gang engage in or have engaged in a pattern of criminal gang activity. And, four, the murder was carried out to *further the activities* of the criminal street gang." (Italics added.)

The court instructed the jury with CALCRIM No. 1401 on the *gang-benefit allegation* in relevant part as follows:

> "*If* you find a defendant guilty of the *crime* charged in Count One, you must *then* decide whether the People have proved the additional *allegation* ... [¶] ... that: [¶] 1. The defendant *committed the crime for the benefit of, at the direction of, or in association with a criminal street gang;* [¶] and [¶] 2. The defendant intended to assist, further, or promote criminal conduct by gang members." (Italics added.)

The crux of Orona's argument is that "CALCRIM No. 370 conflicts with CALCRIM Nos. 1401 and 736, because motive is an element of actively participating in a criminal street gang, furthering the activities of that gang, or committing a felony for the benefit of that gang." With commendable candor, he acknowledges that we have decided the issue adversely to him in *People v. Fuentes* (2009) 171 Cal.App.4th 1133, 90 Cal.Rptr.3d 495 (*Fuentes*) but even so invites us to reconsider *Fuentes* on the ground that "gang statutes define the intent or motive as the same-to further gang activities or to benefit the gang." We decline to do so.

As CALCRIM No. 370 applies only to the gang-participation charge, so CALCRIM No. 736 applies only to the special-circumstance gang allegation and CALCRIM No. 1401 applies only to the gang-benefit allegation. The law is settled that we must look to the entire charge to the jury, rather than to merely one part, to determine if error occurred. (*Sanders, supra,* 11 Cal.4th at p. 535, 46 Cal.Rptr.2d 751, 905 P.2d 420.)

In *Fuentes,* we held that "[a]n intent to further criminal gang activity is no more a 'motive' in legal terms than is any other specific intent. We do not call a premeditated murderer's intent to kill a 'motive,' though his action is motivated by a desire to cause the victim's death." (*Fuentes, supra,* 171 Cal.App.4th at p. 1139, 90 Cal.Rptr.3d 495.) Here, as in *Fuentes,* the instructions required the prosecution to prove the defendant intended to further gang activity and not to show the motivation of "his wish to do so. This was not ambiguous and there is no reason to think the jury could not understand it." (*Id.* at pp. 1139-1140, 90 Cal.Rptr.3d 495.) Absent evidence to the contrary, the jury is presumed to have followed the charge to the jury. (*Mendoza, supra,* 42 Cal.4th at p. 699, 68

23

Cal.Rptr.3d 274, 171 P.3d 2.) Our review of the entire charge to the jury persuades us there was no danger that the absence of a limiting instruction could have misled a reasonable juror. (See *Sanders, supra,* 11 Cal.4th at p. 535, 46 Cal.Rptr.2d 751, 905 P.2d 420.)

(See Lodged Doc. No. 1.)

Due process requires that the jury be instructed on every element of an offense. This is because the prosecution has the burden of proving every element beyond a reasonable doubt. Carella v. California, 491 U.S. 263, 265 (1989), *citing* In re Winship, 397 U.S. 358, 364 (1970). Accordingly, when a trial judge omits an element of the offense charged from the jury instructions, it deprives the jury of its fact-finding duty and violates the defendant's due process rights. Id.; see also United States v. Perez, 116 F.3d 840, 846-47 (9th Cir. 1997) (concluding that a district court's failure to instruct the jury on an element of the charged offense was plain error); United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir.1991) (holding that a district court committed plain error by failing to give a unanimity instruction on an element of the charged offense).

In reviewing a jury instruction, the inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72, *quoting* Boyde v. California, 494 U.S. 370, 380 (1990). A jury instruction violates the Constitution if its use "so infused the trial with unfairness as to deny due process of law." Lisenba v. California, 314 U.S. 219, 228 (1941). The instruction "must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 67, *citing* Cupp v. Naughton, 414 U.S. 141, 147 (1973). Further, jurors are presumed to follow their instructions. Penry v. Johnson, 532 U.S. 782, 799 (2001).

In this case, the state court determination that the jury did not confuse the instructions or misapply them was not unreasonable. By the express terms within the instructions, CALCRIM No. 370 applied only to the gang-participation charge, CALCRIM No. 736 applied only to the special-circumstance gang allegation, and CALCRIM No. 1401 applied only to the gang-benefit allegation. The instructions were not ambiguous. CALCRIM No. 1401 specifically instructed jurors that if they found Petitioner guilty of the charge in count one, it must then decide whether

the prosecution proved the additional allegation of the gang enhancement, which included, *inter alia*, the intent requirement.  Petitioner fails to demonstrate that the jury applied the instructions in a way as to violate the Constitution.

The state court adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). The claim should be denied.

I.  CALCRIM No. 226

In his final claim for relief, Petitioner alleges he was denied his due process rights when the trial court instructed the jury with CALCRIM No. 226, because the jury instruction impermissibly lightened the prosecution's burden of proof.

This claim was also presented on direct appeal to the Fifth DCA and rejected in a reasoned decision.  It was also presented in a petition for review to the California Supreme Court where it was summarily denied.  The Court reviews the opinion of the Fifth DCA.  In denying the claim, the appellate court stated:

> Orona argues that CALCRIM No. 226 prejudiced him on a record with no evidence of any witness's character for truthfulness. The Attorney General argues that Orona forfeited his right to appellate review and, in the alternative, that the instruction did not prejudice him.
>
> Preliminarily, we address the Attorney General's forfeiture argument. Orona cites to nothing in the record showing an objection to, or a request for modification of, CALCRIM No. 226. Nor does he argue that the instruction misstates the law. Instead, he argues that a single sentence in the instruction "was incorrect because the evidence did not support it and the jury could have misconstrued the instruction to [his] detriment." [FN10] His failure to request modification of the instruction forfeits his right to appellate review. (*People v. Guerra* (2008) 37 Cal.4th 1067, 1138, 40 Cal.Rptr.3d 118, 129 P.3d 321.)
>
> FN10. The sentence in CALCRIM No. 226 to which Orona now objects reads, "If the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good."
>
> Even if Orona had not forfeited his right to appellate review, his argument is incoherent. He argues that he suffered prejudice "because the prosecution *offered no evidence* regarding its witnesses [*sic*] reputation in the community" even though the sentence he challenges applies by its own terms only if "*the evidence establishes* that a witness's character for truthfulness has not been discussed." (Italics added.) Absent evidence to the contrary, the jury is presumed to have followed the charge to the jury. (*People v. Mendoza* (2007) 42 Cal.4th 686, 699, 68 Cal.Rptr.3d 274, 171 P.3d 2

1  (*Mendoza*).) His assertion that the sentence he challenges "permitted the jury to presume
2  the witnesses' credibility from the absence of evidence and gave unwarranted support to
   the credibility of the prosecution's witnesses" is meritless.

3  (See Lodged Doc. No. 1.)

4       1.  Procedural Default

5       A federal court will not review a petitioner's claims if the state court has denied relief of

6  those claims pursuant to a state law that is independent of federal law and adequate to support the

7  judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,

8  729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  A state court's

9  refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural

10  rule is considered a denial of relief on independent and adequate state grounds.  Harris v. Reed,

11  489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the concerns of

12  comity and federalism. Coleman, 501 U.S. at 730-32.

13      There are limitations as to when a federal court should invoke procedural default and

14  refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.

15  Procedural default can only block a claim in federal court if the state court "clearly and expressly

16  states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263

17  (1989).  For California Supreme Court decisions, this means the Court must specifically have

18  stated that it denied relief on a procedural ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803

19  (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d

20  344, 347-48 (9th Cir. 1991).  If the California Supreme Court denies a petitioner's claims without

21  any comment or citation, the federal court must consider that it is a decision on the merits.

22  Hunter v. Aispuro, 982 F.2d at 347-48.

23      In addition, a federal court may only impose a procedural bar on claims if the procedural

24  rule that the state used to deny relief is "firmly established and regularly followed."  O'Dell v.

25  Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor

26  respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.

27  Kentucky, 466 U.S. 341, 348-51 (1984).  The state procedural rule used must be clear,

28  consistently applied, and well-established at the time of the petitioner's purported default.  Fields

26

1  v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96

2  F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

3      In this case, the appellate court rejected the claim in accordance with California's

4  contemporaneous objection rule, because the defense failed to object to the instruction.  The

5  Ninth Circuit has noted that California's contemporaneous objection rule is consistently applied

6  independent of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v.

7  White, 166 F.3d 953, 957 (9th Cir.1999).

8      If the court finds an independent and adequate state procedural ground, "federal habeas

9  review is barred unless the prisoner can demonstrate cause for the procedural default and actual

10  prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

11  miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501

12  U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150. In this case, Petitioner has not shown that

13  any external factor prevented defense counsel from objecting.  In addition, Petitioner does not

14  demonstrate actual prejudice resulting from the failure to object.

15      Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will

16  occur if the claim is barred from federal review.  The miscarriage of justice inquiry is governed

17  by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas

18  petitioner to show that "a constitutional violation has probably resulted in the conviction of one

19  who is actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a

20  petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

21  juror would have found him guilty beyond a reasonable doubt. Id. Here, Petitioner makes no such

22  showing of actual innocence.

23      Accordingly, Petitioner is procedurally barred from bringing this claim. In any case,

24  Petitioner's claim is without merit.

25      2.  Review of Claim

26      The Supreme Court has held that the fact that an instruction was allegedly incorrect under

27  state law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71 (1991), *citing*

28  Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause does not

permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief simply because an instruction may have been deficient. Estelle, 502 U.S. at 72. The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72, *quoting* Cupp v. Naughten, supra, 414 U.S., at 147. In addition, in reviewing the instruction, the court must inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380 (1990). Even if constitutional instructional error has occurred, the federal court must still determine whether Petitioner's suffered actual prejudice, that is, whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

In this case, the state court's determination was not contrary to Supreme Court precedent. See Cupp v. Naughten, 414 U.S. 141, (1973) (holding that an instruction establishing a presumption that a witness's testimony is truthful did not shift the burden of proof or otherwise dilute or negate the defendant's presumption of innocence). Here, the jury  was properly instructed on the presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt. Therefore, the state court rejection of the claim was reasonable. It should be denied. 28 U.S.C. § 2254(a).

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and

Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


   IT IS SO ORDERED.

   **Dated:   August 24, 2012            /s/ Gary S. Austin                **
                                      UNITED STATES MAGISTRATE JUDGE